UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mikayle Joshay Cameron,

Plaintiff,

v.

City of Cottage Grove; Cottage Grove Police Department; Officer John Doe #1; and Officer John Doe #2, *sued in both their individual and official capacities*,

Defendants.

File No. 25-cv-2679 (ECT/DTS)

**OPINION AND ORDER**

---

Mikayle Joshay Cameron, pro se.

Julia C. Kelly, League of Minnesota Cities, St. Paul, MN, for Defendants City of Cottage Grove, Cottage Grove Police Department, and Officers John Doe #1 and #2.

---

In this § 1983 case, pro se Plaintiff Mikayle Joshay Cameron claims that two unidentified officers with the City of Cottage Grove Police Department violated his rights under the First and Fourth Amendments to the federal Constitution. Mr. Cameron sues the officers in their individual capacities, and he asserts some of these claims against the Cottage Grove Police Department and the City of Cottage Grove. He also asserts claims under Minnesota law.

Defendants seek summary judgment under Federal Rule of Civil Procedure 56, and the motion will be granted with respect to the § 1983 claims. There are several legal justifications for entering summary judgment against the § 1983 claims. The basic problem

is that Mr. Cameron has not identified evidence that might permit a reasonable jury to find that the unidentified officers violated his federal constitutional rights. I will decline to exercise supplemental jurisdiction over the state law claims so that Mr. Cameron may pursue those claims in state court, if he chooses.

I

This case arises from two encounters Mr. Cameron had with Cottage Grove Police Department officers. Both encounters were recorded by the officers' body-worn cameras. The first encounter occurred the evening of December 30, 2024, when officers were called to Mr. Cameron's workplace, a Renewal by Anderson factory; security officers with the facility asked the police officers to remove Mr. Cameron from the premises because he refused to leave. ECF No. 27- 1 at 22:12:57–22:13:50; 22:14:03–11. When police officers arrived at the factory, a security officer reported that Mr. Cameron would not leave despite being asked to do so several times, that he had refused a drug test, and that it was Renewal by Anderson's policy that an employee's refusal of a drug test resulted in automatic termination or removal from the property. *Id.* at 22:12:52–13:09. The security officer explained that Mr. Cameron was asked to leave initially because "he got really aggressive with one of the supervisors," and he was "shout-talking," "yelling," and "shaking." *Id.* at 22:14:19–30. The security officer reported that "a lot of employees don't feel safe around him." *Id.* at 22:13:12–14. The security officer reported that Mr. Cameron had what "could be some drug-related issue and then he's probably got some mental health stuff going on." *Id.* at 22:13:18–24. The security officer told police officers that Renewal by Anderson "want[ed] [Mr. Cameron] trespassed." *Id.* 22:13:09–10.

A supervisor joined the conversation and reported that "some attendance issues" were raised with Mr. Cameron because he had been "leaving on Fridays, not letting anybody know," but Mr. Cameron felt he did not have to report when he was leaving. *Id.* at 22:14:36–15:05, 22:15:35–16:04. The supervisor told the officers that Mr. Cameron "had behavior now the last three weeks of really kind of blowing up," and that he "blew up on the HR department" a week before and "left kind of a threatening voicemail" with a Renewal by Anderson vice-president. *Id.* at 22:15:03–30. The supervisor explained that before the officers arrived, Mr. Cameron was "not feeling well" and then became "combative," "confrontational," and "aggressive" after inquiring about his attendance points. *Id.* at 22:16:05–16:51. The supervisor explained that he had told Mr. Cameron to "just go home for the night," but Mr. Cameron "blew up" while continuing to inquire about his attendance points. *Id.* at 22:16:51–17:16; *see also* Cameron Decl. [ECF No. 30] ¶ 3 (stating that "[t]he events underlying this case began after [he] received attendance points at Renewal by Andersen that [he] believed were false and retaliatory" and that Mr. Cameron "attempted to address these concerns with supervisors and Human Resources because [he] did not want inaccurate attendance records used against [him]"). The supervisor told police he had decided to have Mr. Cameron undergo drug testing. ECF No. 27-1 at 22:17:15–17:22.

The police officers approached Mr. Cameron at his workstation and served him with a trespass notice. *Id.* at 22:31:44–22:44:18. Mr. Cameron asked the officers whether security "explain[ed] to [police] that [Mr. Cameron] tried to leave," and asserted that the supervisor was retaliating against him. *Id.* at 22:32:05–32:25. Mr. Cameron disputed

whether the supervisor had authority to ask Mr. Cameron to leave the premises. *Id.* at 22:32:25–36:00. Even after being told by the police officers that he had been given a lawful order to leave, Mr. Cameron continued to dispute whether he had been lawfully trespassed and refused to accept the trespass notice. *Id.* at 22:31:44–22:46:45. After being warned of trespass charges, Mr. Cameron agreed to leave, and the police officers escorted him off the property. *Id.* at 22:46:48–22:48:39; ECF No. 27-3 at 22:46:46–22:50:12.

The second suit-prompting encounter occurred on January 2, 2025. That day, Mr. Cameron returned to Renewal by Anderson factory, and Cottage Grove police were again called. *See* Am. Compl. ¶ 13 (stating that "[o]n January 2, 2025, [Mr. Cameron] returned to the premises during his scheduled time to speak with HR and left without incident after being asked to do so"); ECF No. 27-8 (Citation Data Summary stating that Cottage Grove police were "[d]ispatched to Renewal by Anderson for a trespassing complaint" after Renewal security "report[ed] that [Mr. Cameron] had entered the property and was demanding to speak with Human Resources"). Mr. Cameron left the facility before officers arrived, but a Cottage Grove police officer who was later identified in body-worn camera footage as Sergeant Schoen followed Mr. Cameron to his residence. *See* ECF No. 27-4 at 8:50:01–56; Am. Compl. ¶ 14. Although Sergeant Schoen activated his emergency lights, *see* Am. Compl. ¶ 14, Mr. Cameron did not pull over but continued driving until he reached his residence's driveway, hitting two trash receptacles as he turned into the driveway. ECF No. 27-4 at 08:49:20–08:51:08; ECF No. 27-5 at 8:50:20–8:51:04. Mr. Cameron exited his vehicle and walked toward Sergeant Schoen, asking, "what did I get pulled over for?"; Sergeant Schoen responded "trespass." ECF No. 27-5 at 08:50:28–08:51:06. Sergeant

Schoen ordered Mr. Cameron to turn around (that is, to face away from the officer) and put his hands behind his back, but Mr. Cameron did not comply; he instead called for someone named "Cynthia" to come outside and continued to ask why he was pulled over. *Id.* at 08:51:06–08:53:40. Sergeant Schoen pushed Mr. Cameron's shoulder to turn Mr. Cameron around, but Mr. Cameron pushed Sergeant Schoen's hand away. *Id.* Mr. Cameron then turned to face his vehicle, but he refused to put his hands behind his back despite Sergeant Schoen's repeated requests that he do so. *Id.* Sergeant Schoen called for backup, continued to ask Mr. Cameron to put his hands behind his back, and threatened to tase Mr. Cameron if he did not comply. *Id.* After asking Mr. Cameron to put his hands behind his back thirteen times, Sergeant Schoen forced Mr. Cameron to the ground and continued to demand that Mr. Cameron put his hands behind his back, but Mr. Cameron refused. *Id.*

Sergeant Schoen informed Mr. Cameron that he was under arrest for trespass and "resisting." ECF No. 27-5 at 8:52:08–:55. Back-up officers arrived and pulled Mr. Cameron's hands from underneath him and handcuffed them behind his back. *Id.* at 8:53:00–:45. Officers then ordered Mr. Cameron to sit in the back of a squad car while Officer Schoen described the confrontation to other officers. *Id.* at 08:54:00–08:59. After he spent roughly twenty minutes in the squad, Mr. Cameron was given misdemeanor citations for trespass and obstruction of legal process and released. *Id.* at 08:56:52–09:15:55.

On December 4, 2025, Mr. Cameron pleaded guilty to petty misdemeanor trespass-return to property within one year under Minnesota Statute § 609.605.1(b)(8). *See*

Petition to Enter Guilty Plea, *State v. Cameron*, No. 82-CR-25-35 (Minn. Dist. Ct. Dec. 4, 2025), Index No. 23. Mr. Cameron was fined $300, and the obstruction of legal process charge was dismissed. *See* Sentencing Order, *Cameron*, No. 82-CR-25-35 (Minn. Dist. Ct. Dec. 10, 2025), Index No. 25.

In this case, Mr. Cameron asserts six claims, all concerning the officers' conduct during the January 2, 2025 encounter: (1) a § 1983 claim for unlawful seizure/false arrest against the two "Doe" officers; (2) a § 1983 claim for excessive force against the Doe officers; (3) a § 1983 retaliation and abuse of process claim against all Defendants; (4) a *Monell*[1] claim against the City of Cottage Grove; (5) a Minnesota state law claim for assault and battery against the Doe officers; and (6) a Minnesota state law claim for false imprisonment against the Doe officers. Am. Compl. ¶¶ 20–26. Mr. Cameron seeks compensatory and punitive damages, costs and attorney's fees, declaratory and injunctive relief, and "[s]uch other and further relief as this Court deems just and proper." *Id.* § VII.[2]

II

Two threshold issues will be addressed before reaching the merits. First, the brief Mr. Cameron filed in opposition to Defendants' motion raises a waiver problem.

---

1 *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

2 Mr. Cameron's Complaint is entitled to—and has been given—liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[H]owever inartfully pleaded," pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)).

A litigant's complete failure to respond to an opposing party's argument is often construed as a waiver. *See Dorosh v. Minn. Dep't of Hum. Servs.*, No. 23-cv-1144 (ECT/LIB), 2023 WL 6279374, at *9 (D. Minn. Sept. 26, 2023) ("A plaintiff waives its claims by failing to respond to a defendant's arguments on a motion to dismiss." (citation omitted)); *Hopper v. BMO Harris Bank, N.A.*, No. 22-cv-1828 (JRT/JFD), 2023 WL 4936160, at *3 (D. Minn. Aug. 2, 2023) ("Failure to respond to arguments in favor of dismissal may constitute waiver and abandonment, justifying dismissal on that basis alone."); *Doe v. Mayorkas*, No. 22-cv-00752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sept. 23, 2022) (citing *Espey v. Nationstar Mortg., LLC*, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014) (collecting cases)); *Christensen v. PennyMac Loan Servs.*, 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013) ("Plaintiff's failure to respond amounts to a waiver, and on that basis alone, defendants' motion to dismiss should be granted." (collecting cases)).

Here, Mr. Cameron filed an opposition brief, but he did not respond in any meaningful way to the arguments Defendants raised in their motion. *See* ECF No. 29 at 1. Mr. Cameron argued that the trespass itself was "improperly initiated" and was based on misleading information that Renewal by Anderson employees provided to law enforcement. *See id.* These contentions do not respond to or address any of the legal arguments raised in Defendants' summary-judgment motion. *See* ECF No. 29. Separately, though Mr. Cameron asserted that "material facts remain genuinely disputed," he offers no evidence or argument that might undermine the body-worn camera footage and support his version of events. *See id.* Defendants' motion could be granted on these grounds alone.

Second, Mr. Cameron argues that deciding the summary-judgment motion would be premature because he has "not had a fair opportunity to fully complete discovery" due to homelessness and loss of employment he experienced during this litigation [ECF No. 29 at 1–2; ECF No. 30 at 3], but this is not persuasive. "Under Rule 56(d), a court may defer considering a summary judgment motion or allow time for discovery '[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition.'" *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 836 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(d)). "Rule 56 'does not require trial courts to allow parties to conduct discovery before entering summary judgment.'" *Id.* (quoting *United States ex rel. Small Bus. Admin. v. Light,* 766 F.2d 394, 397 (8th Cir. 1985) (per curiam)).

> A party seeking additional discovery under Federal Rule of Civil Procedure 56(d) has to show: "(1) that [he] [has] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion.

*Yassin v. Weyker*, 39 F.4th 1086, 1091 (8th Cir. 2022) (quoting *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014) (quotation marks omitted)). "[I]t is not enough for a party to set forth some facts [he] hopes to elicit from further discovery" to comply with Rule 56(d). *Anzaldua,* 793 F.3d at 836–37 (citation modified). "[T]he mere assertion that evidence supporting a party's allegation is in the opposing party's hands is insufficient to justify a denial of a summary judgment motion on [Rule 56(d)] grounds." *Id.* at 837 (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1211

(10th Cir. 1988)). "Rule 56(d) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of unlawful conduct." *Toben*, 751 F.3d at 895 (citation modified).

Mr. Cameron has not done what Rule 56(d) requires. Fact discovery closed May 1, 2026. *See* ECF No. 20. It is undisputed that Mr. Cameron never requested discovery from Defendants during the discovery period. *See* ECF No. 32 ¶ 3. In response to this motion, Mr. Cameron submitted a declaration stating generally that "[a]dditional discovery remains necessary, including body worn camera footage, dispatch records, officer communications, identification of involved officers, communications with Renewal by Andersen personnel, training materials, and use-of-force documentation." ECF No. 30 at 3. But these assertions do not identify what discovery is necessary with any reasonable precision, nor do they connect the requested discovery to the resolution of Mr. Cameron's claims. In briefing, Mr. Cameron also referenced discovery related to "retaliatory and false statements . . . made by [Mr. Cameron's] supervisor in order to have [Mr. Cameron] removed from the property under false pretenses." ECF No. 29 at 1. But Mr. Cameron did not explain how or why that information might be relevant to his claims. Mr. Cameron's request for additional discovery is not supported and does not justify deferring the adjudication of Defendants' motion.[3]

[3] Mr. Cameron asserts that he "did not timely receive or review all body worn camera footage and related materials referenced by Defendants." ECF No. 29 at 1. Mr. Cameron never alerted the Court to any discovery deficiencies during the discovery period. *See generally* Docket. And he filed his brief in opposition to Defendants' summary judgment motion the same day Defendants filed their motion, without taking advantage of the 21-day

III

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution "might affect the outcome of the suit" under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted).

A

Defendants argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Mr. Cameron from asserting claims in this case that would effectively challenge his trespass conviction. *See* ECF No. 26 at 16–17; ECF No. 31 at 2–4. In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87 (footnote omitted). In other words, if a judgment in favor of a § 1983 plaintiff "would necessarily imply the invalidity of his conviction or sentence," then "the

---

period in which he was allowed to prepare his response to raise these issues via motion. *See* ECF Nos. 26, 29; D. Minn. LR 7.1(c)(2).

complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

Mr. Cameron pleaded guilty and was convicted of misdemeanor trespass and sentenced to a fine in state court. He does not assert that his conviction has been reversed, declared invalid, or called into question. Finding for Mr. Cameron on his § 1983 claims challenging his arrest as lacking probable cause, *see* Am. Compl. ¶¶ 20, 22 (Counts I and III), would require first determining that Mr. Cameron's conviction and sentence for trespass are invalid. The *Heck* rule bars these claims.

B

Defendants seek summary judgment based on qualified immunity regarding the claims against the Doe officers. ECF No. 26 at 13. Whether the Doe officers possess qualified immunity from Mr. Cameron's § 1983 claims depends on the answers to two questions: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional . . . right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citation omitted); *see also Watson v. Boyd*, 2 F.4th 1106, 1109 (8th Cir. 2021). Courts may consider the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). "Qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Kong ex rel. Kong v. City of Burnsville*, 960 F.3d 985, 991 (8th Cir. 2020) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). If the material facts are not

genuinely disputed, then the constitutionality of an official's conduct is a question of law. *Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir. 1992); *see also Pollreis v. Marzolf*, 66 F.4th 726, 732 n.2 (8th Cir. 2023); *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

Mr. Cameron claims the Doe officers violated his Fourth Amendment rights by detaining him without a warrant, probable cause, or other legal justification, and by using excessive force when taking him to the ground and handcuffing him. *See* Am. Compl. ¶¶ 20–22. He further alleges that the officers violated his First and Fourth Amendment rights by arresting him in retaliation for a legal action initiated by his then-girlfriend. *See id.*

Viewing the record favorably to Mr. Cameron, he has not shown a federal constitutional violation. The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out," including whether excessive force was used. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original) (citation omitted). Nevertheless, "if there is at least 'arguable probable cause'" for a warrantless arrest, it is "consistent with the Fourth Amendment . . . and an officer is entitled to qualified immunity." *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). Probable cause exists when the circumstances "are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010). And to establish a constitutional violation regarding use of force, a plaintiff must "show the amount of force used was objectively unreasonable under the particular

circumstances." *Pollreis*, 66 F.4th at 731 (quoting *Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022)). In assessing whether officers used excessive force, courts consider: "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." *Graham*, 490 U.S. at 396. This consideration "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). If an official does act "based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may . . . bring[] a First Amendment claim." *Id.* For a retaliatory-arrest claim, a plaintiff must show either there was no probable cause for the arrest or that "he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 406–07.

The unchallenged body-worn camera footage demonstrates probable cause for Mr. Cameron's arrest. Footage from December 30, 2024, shows police officers serving Mr. Cameron a trespass notice after Renewal by Anderson security called police to have Mr. Cameron trespassed from the facility. After Renewal by Anderson reported to police

that Mr. Cameron had returned to the factory in violation of the trespass notice, footage from January 2, 2025, shows Sergeant Schoen tailing Mr. Cameron's car with his emergency lights activated. Mr. Cameron did not stop, and then once he reached his residence, Mr. Cameron refused to comply with Sergeant Schoen's repeated commands that Mr. Cameron put his hands behind his back. Sergeant Schoen possessed probable cause to arrest Mr. Cameron for trespassing and for resisting arrest. *Heck* aside, there was no unlawful seizure or retaliatory arrest.

The body-worn camera footage also establishes that officers used objectively reasonable force in detaining Mr. Cameron. Although Mr. Cameron's initial trespass crime was comparatively minor, Mr. Cameron refused to pull over when Sergeant Schoen activated his emergency lights and then actively resisted arrest. Mr. Cameron failed to comply with the commands of Sergeant Schoen, who was the lone officer at the time of the stop, refusing to put his hands behind his back after being ordered to do so thirteen times. When back-up officers arrived, they had to pull Mr. Cameron's hands from underneath him in order to handcuff him behind his back. After a brief period of detention, Mr. Cameron was released with a citation. On these facts, the use of force did not result in a constitutional violation. *See Ehlers v. City of Rapid City*, 846 F.3d 1002, 1007, 1011 (8th Cir. 2017) (finding officer's takedown did not violate a constitutional right where individual ignored officer's commands to step back and place his hands behind his back, and "at least appeared to be resisting"); *Kohorst v. Smith*, 968 F.3d 871, 877 (8th Cir. 2020) (stating that officer's "arm-bar takedown and the pushing down of [arrestee], who at minimum appeared to be resisting and was not complying with commands, [did] not rise

to the level of force required to constitute a constitutional violation"); *Cravener v. Shuster*, 885 F.3d 1135, 1139 (8th Cir. 2018) (stating that officer's "use of a standard defensive tactic was reasonable" considering individual's "repeated refusals to comply with reasonable instructions").

Finally, the officers' use of handcuffs on Mr. Cameron did not constitute the objectively excessive use of force. "Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (citation modified). The Eighth Circuit has said that "[f]or the application of handcuffs to amount to excessive force, there must be something beyond minor injuries." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005); *see Kushner v. Buhta*, No. 16-CV-2646 (SRN/SER), 2018 WL 1866033, at *14 (D. Minn. Apr. 18, 2018) ("The Eighth Circuit has explicitly required proof of more-than-*de minimis* injury for a claim of excessive force in handcuffing."), *aff'd*, 771 F. App'x 714 (8th Cir. 2019). And "[t]he application of handcuffs without evidence of any long term damage does not generally state an excessive force claim." *Mahamed v. Anderson*, No. 7-cv-4815 (ADM/FLN), 2009 WL 873534, at *3 (D. Minn. Mar. 30, 2009) (citing *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir. 1990)); *Traylor v. Buck*, No. 24-cv-57 (NEB/LIB), 2024 WL 5452667, at *12 (D. Minn. Nov. 19, 2024) (same), *R & R. adopted*, 2025 WL 521139 (D. Minn. Feb. 18, 2025), *appeal dismissed*, 2025 WL 4351992 (8th Cir. July 17, 2025); *see Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) (stating that "being handcuffed too tightly [is] not tantamount to excessive force in the absence of medical records indicating . . . any long-term injury as a

result of the handcuffs." (citation modified)). Here, Mr. Cameron does not attribute any injury to the handcuffing, much more a long-term or more-than-minor injury. Nor has he provided any medical records or other evidence demonstrating that any such injury occurred. Accordingly, his § 1983 claim will be dismissed to the extent it is predicated on the excessive force of handcuffing.

C

Defendants are entitled to summary judgment with respect to Mr. Cameron's claim against the Cottage Grove Police Department, Count III. ECF No. 26 at 15; *see* Am. Compl. ¶ 22. The Cottage Grove Police Department is not a suable entity separate from the City of Cottage Grove. *See El-Alamin v. Radke*, 369 F. App'x 770, at *1 (8th Cir. 2010) ("[T]he Minneapolis Police Department (MPD) is not a suable entity."); *Polta v. City of St. Paul Police Dep't*, No. 06-cv-1014 (PAM/AJB), 2006 WL 1174210, at *2 (D. Minn. May 1, 2006) ("A municipal police department is simply not a 'suable entity;' it is merely a part of some larger municipal government, and has no separate legal existence by itself."); *VanHauer v. Minneapolis Police Dep't*, No. 23-cv-1208 (ECT/LIB), 2024 WL 3540799, at *5 n.5 (D. Minn. July 25, 2024).

D

Defendants seek summary judgment regarding Mr. Cameron's *Monell* claim against the City of Cottage Grove. To bring a successful *Monell* claim against a municipal entity under 42 U.S.C. § 1983, a plaintiff "must show that [his] injury was caused by a municipal policy or custom." *Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010). To show a custom,

> the plaintiff must prove (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to the governmental entity's custom.

*Mitchell v. Kirchmeier*, 28 F.4th 888, 899–900 (8th Cir. 2022) (citation modified). However, "absent a constitutional violation by a city employee, there can be no § 1983 or Monell liability for the City." *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018).

There are two problems with Mr. Cameron's *Monell* claim. The first is that the Doe officers committed no constitutional violation. As explained, they did not violate Mr. Cameron's First and Fourth Amendment rights because there was probable cause to arrest him, and the officers used objectively reasonable force in executing that arrest. Therefore, there can be no valid § 1983 or *Monell* claim against the City of Cottage Grove. Mr. Cameron also fails to allege facts allowing the reasonable conclusion that the City maintained a policy or custom that resulted in his injury. Although he does refer to a civil lawsuit that another person is bringing against Cottage Grove police officers for excessive force and unlawful detention [ECF No. 30 ¶ 23], this is not enough to show a "continuing, widespread, persistent pattern of unconstitutional misconduct." *Mitchell*, 28 F.4th at 899 (citation omitted).

E

As for Mr. Cameron's state law claims, Counts V and VI, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when, as here, all federal claims are dismissed well before trial. *See Hervey v. County of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008). Accordingly, I will decline to exercise supplemental jurisdiction over Mr. Cameron's state law claims.[4]

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion for Summary Judgment [ECF No. 24] is **GRANTED**.

2. Counts I, II, III, and IV of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

---

[4] After Defendants filed their reply brief, Mr. Cameron filed a "Response Regarding Failure to State a Claim." ECF No. 33. The Court's Local Rules do not authorize a sur-reply, *see* D. Minn. LR 7.1(c), and Mr. Cameron did not seek the Court's permission to file one, *see id.* LR 7.1(i). The arguments in Mr. Cameron's additional brief were not considered in adjudicating Defendants' motion.

3. Counts V and VI of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 20, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court